Thank you, Your Honor, and good morning. Matt Larson of the Federal Defender's Office for Mr. Gardenhire. Your Honors, Mr. Gardenhire's two-and-a-half-year sentence must be vacated because the government proffered no evidence, let alone the requisite clear and convincing evidence, that Mr. Gardenhire's use of a laser pointer, quote, involved recklessly endangering the safety of an aircraft. To prove recklessness, Your Honors, the government had to prove that Mr. Gardenhire was aware of the risk created by his conduct. In other words, to prove that Mr. Gardenhire knew that when he was playing with that handheld laser in his backyard one night two years ago, he knew that the beam could not only reach a jet half a mile away, but also that it would be so powerful to so distract the pilot from flying the plane as to create a genuine danger of causing a crash. He knew, though, that from his buddy that gave him the laser, he knew that that laser, if you shine it in somebody's light, could cause some real serious problems, right? Yes, Your Honor. His friend had told him not to shine it directly into someone's eyes because it could be dangerous. His friend did not tell him, don't shine it at a jet half a mile away because the intensity that you're going to send into someone's eyes two feet from you is the same intensity that you're going to send into the eyes of a pilot operating a jet half a mile away. There's no evidence. So what was the risk that he had to be aware of? He had to be aware of the risk that the beam could not only reach this jet, but create a genuine danger to the plane by so distracting the pilot. Now, the government says, well, taking the evidence, mixed as it was, there was conflicting evidence as to whether Mr. Gardenhire admitted or denied seeing the beam actually make contact with the body of the he saw the beam make contact with the jet. Therefore, you have to assume because he could see the beam make contact with the jet, the pilot had to have been able to perceive the beam. Your Honors, that's not enough to trigger the enhancement here. But isn't the enhancement triggered if once he saw that the light hit the side of the airplane, that then he became aware that the intensity of the light was such that it could hit the plane and possibly cause the pilot to go blind and the plane to crash? Light is of different intensities, Your Honor. And the fact that a light may be perceived by someone half a mile away does not reasonably suggest that simply perceiving the light is going to blind the person. And in fact, we know from the record here that there was quite scant evidence that any actual danger was created. The pilot who experienced the laser burst said it was a one to two second burst of light that was a distraction comparable to the headlight of an oncoming car or comparable to a bright light at a rock concert. He said it was a distraction, but he never lost control of the plane. He was in full control. He was able to land the plane safely. Now, Your Honors. What are we to make of the fact, even if we agree with you, what are we to make of the fact that the trial judge said he would have given your client the same sentence even if he hadn't found the enhancement? I think that, as I briefed, Your Honor, that can't be credited under the law. I think that the Supreme Court in Gaul was clear that defendants who are not similarly situated may not be given the same sentence. The judge here said essentially, even if this Court reverses me and says there was inadequate evidence of recklessness, I'm still going to sentence Mr. Gardenhire as if he acted recklessly. The Supreme Court has disapproved this because clearly someone who acts recklessly is not in the same position as someone who does not. He has some discretion under the guideline. The guidelines aren't binding on him. Certainly. And, in fact, he rejects the guideline. If he removed the recklessness enhancement, why couldn't he, why couldn't a judge, any judge for that matter, still impose a 30-month sentence? Without the recklessness enhancement, Your Honor, the range is zero to six months in prison, right? Taking that range and then looking at the 30-month sentence, our submission is that that's substantively unreasonable here. The judge essentially all but admitted that. He said the characteristics of this particular defendant do not support a 30-month sentence. He said the reason I'm imposing this sentence, he said two things. He said what he found to be the seriousness of the offense and then the need for general deterrents. Right. First, Your Honor. They're both recognized factors that a district court judge can rely on under 3553A. Indeed, they are, Your Honor, but we submit here the judge relied on them erroneously because, number one, our submission, which the government hasn't seriously rebutted, is that the court overestimated the seriousness of the danger here. We submitted evidence below that there have been thousands of laser strikes in the United States and the crash rate is zero percent. Now, that does not mean this should be encouraged and that's not our position. We're not saying it's a good idea to shine lasers at jets, but sentencing law has to Sentence take note. Sentencing law, Your Honor, has to take account of the real circumstances involved in the particular case. And here, the district judge made very plain that he thought this was a very bad thing and he wanted to send a message, he wanted to make an example of Mr. Gardenhire, but the particular facts of the case did not warrant it. Not only was there inadequate evidence of recklessness, but there was inadequate evidence supporting a 30-month sentence. Everyone in this case but the judge recommended a sentence far lower than that, Your Honors. Even the government, after saying that the range should be 18 to 24 months, even the government said 12 months is enough. Probation office agreed, 12 months and a day to get some credit to get out early is enough. Only the judge said that 30 months was a reasonable sentence and we submit, as we briefed and I can talk about further if Your Honors would like, that that sentence is substantively unreasonable. But, Cobb, I, and this is, this, he was prosecuted under a relatively new law where there had only been two prior federal prosecutions despite the huge number of incidents. In those other two prosecutions, do you know what the sentence opposed was? I'm afraid I don't, Your Honor. I do know that the average sentence, this crime has been prosecuted stateside in L.A. for, for quite some time before the, the federal statute came into effect. And as we documented in district court, the sentences have been quite low. A few days in jail, a few months in jail. I just saw the other day, because a friend told me to Google it, Clark Gable's grandson was convicted of doing this. He was shining a laser at a helicopter on Hollywood Boulevard and he got 10 days in jail under state law. Where do they get these lasers? Where do they get them? God only knows, Your Honor. What, what do you use them for besides shining them into airplanes? I mean, here, Mr. Gartenheim was playing with his friends. They would use it, they would shine it at stop signs. He was playing with his cat. I don't know what's going on there, but I, I think the point, though, is that these, these lasers are deceptively powerful. They are widely available, but the public doesn't realize the strength that they have. That's also the point we made below. Not only does the public not know how powerful these beings can be, but certainly the 18-year-old Mr. Gartenheimer, who was playing with it in his backyard one night, is not aware that not only can this actually reach the thing, but be powerful enough to potentially cause a crash. The reality is the pilot said it was a distraction and something, obviously, that shouldn't happen. You don't want this happening when you're operating a plane. But he said it's comparable to if I'm driving a car, a strong headlight of an oncoming car in the opposite direction. It's something that is a distraction. We don't like it, but it's not something that endangers the safety of the jet, especially given here the pilot, also documented below, is a 13-year veteran at the time. He's experienced. He knows what he's doing. And he said, yes, it was a distraction, but I never lost control of the plane. I was able to land safely. And he said, when asked on the FBI questionnaire to document any effects on cockpit operations, he said none. Let me just push you in the argument that this was a substantively excessive sentence. That's a hard argument for you, isn't it? The law is pretty tough. It's rare that we're going to find that a sentence, even a sentence above the guidelines, was substantively excessive. Why is this sentence substantively excessive? It is rare, Your Honor. First, we've briefed that. We don't even have to get there. We're arguing procedural error here in applying the recklessness enhancement. But to answer Your Honor's question, I do think this is one of those unusual cases. If we look at the record as a whole, especially absent the recklessness enhancement, the range is zero to six. Even with the enhancement, the government is recommending a below-guideline sentence. The probation office is recommending a below-guideline sentence. They recommend. Didn't they at first agree to a diversionary sentence? Thank you for reminding me of that, Your Honor. Yes. Initially, the parties here recommended a diversion to the CASA court, which would have resulted in no jail time at all for Mr. Gardenhier. They recognized that this is a youthful offender. This was an act of stupidity. This is not something warranting two and a half years in federal prison when you're 18 years old. The parties recommended this CASA disposition. The judge denied it without explanation. The parties then came in and disputed the recklessness question. But even then, the government and probation office recommended a lower sentence. The judge said no. I'm not just going to say no. You recommended a year, right? Wasn't there a year? One day and then a year? The government said a year, Your Honor. The probation office said a year and one day. The difference being you get the adjustment. Your Honor knows. And then the judge said, I'm not only going to reject those recommendations, I'm going to reject the guideline, which, by the way, was made for crimes far more serious than this. Remember, the guideline that was applied here is not the guideline for shining a laser. It's the guideline for being on a plane and causing the kind of ruckus as was documented in Gonzales and Nagani where a genuine danger to aircraft safety is created. Saying things like, I have a bomb, I'm blowing the plane up, lighting a cigarette, fighting, punching people, saying I'm going to open the cabin door. These are things that everyone knows are reckless. Playing with a toy in your backyard when you're a teenager one night and shining it at something half a mile away is not something that one should objectively know is dangerous and certainly is not something that the evidence showed that Mr. Gardenhier knew was objectively dangerous. Because the judge erred by applying this recklessness enhancement and thereby skewing the range, a remand for resentencing is required. And as we argued to do, we would like you to do it. We argued that we should send it back to a different judge. Yes, Your Honor. We are asking for a reassignment, at least to preserve the appearance of justice. There are two bases on which one can reassign a case. One is to preserve the appearance of justice. One, the other is because one may reasonably question whether the judge will have difficulty putting out of his mind previous views. We think the record supports that here, but we don't have to go that far. Our submission, which the government notably has not contested, is that it is advisable to preserve the appearance of justice to reassign this case. And that's documented by the entire arc of how this case started. From the very beginning, from the judge saying no to CASA, to the very end, the judge applying the enhancement without the requisite evidence, and then saying, even if I'm wrong, and even if this court tells me I'm wrong, I'm still giving him the same sentence, because I'm sending a message with this kid. I don't care that his personal characteristics don't support two and a half years. I want to send a message. Your Honors, on this record, we think to preserve the appearance of justice, reassignment is warranted, especially given the Gonzalez case that even the government cites, where this court reassigned three different cases from the same district judge here to preserve the appearance of justice. All right, thank you, counsel, for your time. Good morning, Your Honors. May it please the court, Carrie O'Neill on behalf of the United States. Your Honors, contrary to defendant's arguments, the district court did not clearly err in its findings of fact. And its conclusion that the defendant recklessly endangered the safety of the aircraft is, under Hinkson, neither illogical, implausible, or without support in the record. This is a state-of-mind inquiry, an inquiry that district courts and juries undertake every day. And here, the evidence, inferences from that evidence, as well as logic and common sense, support the district court's conclusion that the defendant was aware. What was the evidence? The evidence. Explain, point to all the evidence that you say supports the district court's determination that he was aware of the risk. Yes, Your Honor. So what I'll start with first is the fact that this was not a toy, as defense counsel has suggested. The facts show that this was a class 3B laser that, in defense counsel's own words, had an output that grossly exceeded FDA regulations. And that's at ER 89. Defendants on expert submissions in the district court- Was Gartenhauer aware of the power of the laser? He was aware of the power to the extent that his friend had warned him not to shine it in people's eyes because it would blind him. He was aware of the power, given that the offense conduct in this case occurred two days after he initially played with that laser, shining it with Rodriguez around the neighborhood, at parked cars, at stop signs. Did anything happen when they were playing around with the laser? Did anything- What's the language? Gross danger? Did any gross impact occur? The record does not reflect that. But what the record reflects is that in the two days prior to the offense conduct, the defendant's awareness of the reach of the laser and his awareness, frankly, Your Honors, of the potential dangers of the laser is rising. If he can- Because this, at GER 110, the defendants, again, expert submissions show that this was a visible, continuous wave laser. You can see the trajectory of the laser as you are shining it down the street. This laser had a massive and long reach. And the defendant even told the FBI he was very impressed with the laser because of its reach. So you've got that and you've got a buddy telling him that don't shine this in people's eyes. That's like your mother saying you're going to shoot somebody's eye out with your geeky gun. Well, then what the defendant does, Your Honor, respectfully, is he shines it at the aircraft. Not just once, not just twice, but multiple times. The pilot of the Cessna reported on the laser questionnaire that his plane was being tracked, a backward and forward movement of the laser along the plane. But the defendant does not stop there. Then the helicopter approaches. This helicopter was 400 to 500 feet in the sky. The place that we're coming, right? That's correct, Your Honor. To find the location of the laser. But what's interesting here and what shows the defendant's state of mind and approaches the defendant's house, he strikes it six times. Well, he, I mean, he, I use the word strike. This kid is not a terrorist. This is not a. Absolutely, Your Honor. Strike at the helicopter. My understanding of that was that he was trying to figure out whether the police were, whether in fact that helicopter had police and it, it, it doesn't strike me to be a super a kid that grasps things really quickly. Well, respectfully, Your Honor, I, I, I disagree. I think it, it belies common sense that if you're wondering whether or not a helicopter approaching you is a police helicopter, that you strike it six times. Maybe he's not striking it. Maybe he's looking to see if it's police or not. Well, by striking, what I mean is the laser is hitting the helicopter. It's moving with the helicopter. As the helicopter pilots reported each incident of the laser being reflected upon the plane was, and that laser was being held there for three to 10 seconds. Was there any damage to the helicopter? No, Your Honor, because the goggles, the pilots were wearing protective goggles because they were aware of the situation. What you're saying is that this is a nine point enhancement, right? This is a huge enhancement. So every time somebody told by a buddy that if you shine that laser in somebody's eyes, you're likely to hurt their eyes, and he's aware that it's a particularly powerful beam, that equals recklessness. Knowledge of danger is sufficient to get this nine point enhancement. I, I, I think, Your Honor, and that's, that's an important question. And I think the answer, and perhaps I don't have to answer it this affirmatively, but the answer is no, not just that. What we have here is defendant's repeated use of the laser close to and around Burbank airport. He knew he was near Burbank airport. In fact, that Cessna was a quarter of a mile and 30 seconds away from landing. And the defendant played with this laser in the backyard of the childhood home in which he grew up. He was aware that those planes were coming in and out of Burbank airport. So there is a higher level of awareness here beyond just the warning and the use. Moreover, it's repeated tracking. It's multiple use of the laser. And, Your Honors, respectfully, I believe that that evinces necessarily the fact that there are, that there are. The recklessness standard requires that the defendant be aware of the dangerous, dangerousness. Now, he's not going to say that explicitly, but what you're saying is we can comfortably draw the inference based upon the facts that you've told us that he knew that he was putting that plane in danger when he shined the light at it. And he intended to put the plane in danger. Well, Your Honor, the government doesn't have to show knowledge or intentional. This is not 2A5.2A1's intentional endangerment. This is not knowing endangerment. This is a lower mens rea requirement under 2A5.2A2. Reckless. Aware of the danger. Aware. But, Your Honor, use the words intentional and knowing. He was aware that he was putting the plane in danger. He was aware that he could be putting the plane in danger. It's a potential threat. As in Nagani, the defendant was acting wildly on the airplane. He was aware of his actions of acting wildly. And the Ninth Circuit held he should have been aware that that was causing a distraction to the pilot. And that if a real emergency had arisen, the pilot would not have been able to respond. Does this enhancement of nine levels require a finding of clear and convincing evidence? It does, Your Honor. And that was argued in the district court and the district court held that was satisfied. In the sentencing context, that means highly probable. Was it highly probable the defendant was aware of the safety risk and did he disregard it? And, Your Honor, the argument boiled down to its essence is rather straightforward. This is a defendant who is aware he's playing with a light source that can hit a plane the minute it hits that plane the first time. He is aware it can travel lengthy distances the minute it does that the first time. Defendant argues, well, I didn't know that the laser could expand along far distances. But logically, Your Honors, it has to expand. Otherwise you would not be able to perceive it hitting the plane. Stop there, because that bit of physics is not something I or anyone else in my chambers was aware of until we read this case. So why would we expect that an 18-year-old kid would be aware of that? Your Honor, I'm surprised. Frankly, to me, it seemed rather straightforward. If I'm shining a pinpoint laser half a mile away and I can perceive it, it's obviously not a pinpoint half a mile away because normally I can't see tiny objects half a mile away. And, you know, maybe it's just I'm too involved in the law to be thinking about physics. Or maybe I never took physics. Well, Your Honors, we don't even have to get. I couldn't do physics either. I couldn't do physics either. But, Your Honors, the government's point. So how did you learn that fact? I thought about it. I thought about it when I was preparing for oral argument. Think about it and come up with an argument about it. Your Honors, I see that I am. Can I ask you one other question? Yes. I'm just curious. Was it your district that prosecuted the two other cases under this statute? Under the 39A? No, Your Honor. Where were they from? My understanding is that there was, prior to this case, there was one out of the Middle District of Florida. I'm not sure if you're referring to the Eastern District of California cases, Rodriguez and Coleman. So there was much made by District Judge Wilson that this is a new statute, only two cases, and therefore he wanted to impose a huge sentence, regardless of the enhancement, to make people aware that there's a statute and they shouldn't be showing lasers at airplanes. And so I'm just wondering what, you know, in those other cases, what the sentence was, was the nine-level enhancement given? Your Honor, I'm not sure. Unfortunately, I don't have those facts before me. I do know that subsequent to this case, there have been several cases where the defendants have stipulated to the recklessness enhancement, or they have fought it and the district courts have applied it, including the Eastern District case of United States v. Rodriguez and Coleman, where Rodriguez went to trial on a 32A5 and a 39A charge, received a five-year stat max on the 39A, and Coleman received 24 months on the 39A. So Counsel, you make a very strong argument for the sentence that was imposed. It seems a little inconsistent to me that you were previously willing, that your office was previously willing to enter into a diversionary program where he would get no jail time at all. Well, I mean, that seems two inconsistent positions. Well, Your Honor, the government proposed the CASA program at the outset for this defendant. That is correct. And the court rejected that. Then the case progressed. There were other factors that came to light. What were the other factors that came to light? Well, um. What more did you learn that you didn't know when you filed the case? Well, Your Honor, it's nothing particular about the offense conduct, but about the nature and circumstances of the defendant, his somewhat of noncompliance with probation office. And so that merited a strict position on part of the government to go for the enhancement and to go for and to now defend a 30-month sentence? Your Honor, I'm not saying that it merited it. That was the prosecutorial choice made at the time. Probation office also arrived at a similar recommendation. And the plea agreement, Your Honors, allows the government to argue that the sentence that the district court imposed was lawful. And here, and I believe it's United States versus Mohammed, this court citing a Seventh Circuit case that eludes me now says reasonableness is not a point, it's a range. And so here, yes, the sentence is outside of the guideline range. It's beyond what the government recommended at sentencing. However, it's not substantively unreasonable. It may not be the sentence that you would have imposed sitting before this case. But the question is whether or not there was a clear error of judgment by the district court in so doing. And yes, the district court relied on deterrence. That's the main argument here. However, Barker says that it's not per se inappropriate to look to deterrence. Moreover, every federal criminal sentence not only reflects the need for punishment and the personal circumstances and nature of the defendant, but it serves to deter every federal criminal sentence. Thank you. Do you have any position on if we were to vacate this sentence, whether we should send it to a different district court judge? Your Honors, I don't think reassignment is necessary here. And if I may, I believe defendant's argument is premised on a misinterpretation somewhat of the record, not historically the different positions that the district court took in terms of rejecting CASA and the government's recommendation. But when the defendant filed his motion for bail pending appeal, and that's at docket entry 65, he did not indicate to the district court that he was challenging the factual finding of recklessness. He argued that 2A 5.2 hadn't been applied to 39A before, and it hadn't been applied to conduct outside the aircraft as opposed to inside. So therefore, it's the government's position that when the district court said that even if this court found that the enhancement shouldn't apply, he would apply a similarly lengthy sentence to capture the reckless nature of the conduct. That's because at the time that he was asked to opine, the defendant wasn't saying per se that he was challenging the factual finding of recklessness. Therefore, I don't believe there's anything on the record that shows that the court has prejudged the case or shown false. I thought I read it where he said that even if we didn't, that even if we disagreed with his application of the enhancement, that he would still impose the same sentence. And that's because of the nature and the way that the defendant presented his argument to the district court. He did not, in his motion for bail pending appeal, make exactly the same arguments that he's making now. The arguments were that 2A 5.2, which the sentencing commission at that time had not yet said applies to 39A. His argument was it shouldn't at all. And his argument was the Ninth Circuit has never used 2A 5.2 for conduct outside. So does Mr. Gardenhire on bail pending appeal or not? He is, Your Honor. He is. All right. Thank you. You're well over your time. Thank you. The case of United States versus Gardenhire will be submitted.
judges: Ponsor, Wardlaw, Paez